**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-1600-WJM-KMT

ESTATE OF DE'VON BAILEY, by and through its personal representatives Delisha Searcy and Greg Bailey,
R.B., a minor, by and through their legal guardian Laquana Gardner.

      Plaintiffs,

v.

CITY OF COLORADO SPRINGS, COLORADO, a municipality;
SERGEANT ALAN VAN'T LAND, in his individual and official capacity; and
OFFICER BLAKE EVENSON, in his individual and official capacity,

      Defendants.

---

**SCHEDULING ORDER**

---

## 1. DATE OF CONFERENCE

The Scheduling/Planning Conference pursuant to Fed. R. Civ. P. 16(b) has been vacated.

The Parties are instead Ordered to submit their proposed scheduling order on or before November 23, 2020. *See* Doc. 32. The counsel below have entered their appearances on behalf of the Parties:

| | |
|---|---|
| Darold W. Killmer | Erik Lamphere |
| Mari Newman | City of Colorado Springs |
| Reid Allison | 30 S. Nevada Ave. |
| Liana Orshan | Suite 501 |
| KILLMER, LANE & NEWMAN, LLP | Colorado Springs, CO 80903 |
| 1543 Champa Street, Suite 400 | Phone: (719) 385-5909 |
| Denver, CO 80202 | Fax: (719) 385-5535 |
| dkillmer@kln-law.com | erik.lamphere@coloradosprings.gov |
| mnewman@kln-law.com | |
| rallison@kln-law.com | *Attorney for Defendant City of Colorado Springs* |
| lorshan@kln-law.com | |

Daniel G. Kay, P.C.
318 E. Pike Peak Ave
Colorado Springs, CO 80903
Phone: (719) 635-3611
Fax: (719) 635-5544
dk@danielkaylaw.com

*Attorneys for Plaintiffs*

Gordon L. Vaughan
Ann Baumgartner Smith
VAUGHAN & DeMURO
111 South Tejon, Suite 545
Colorado Springs, CO 80903
(719) 578-5500 (phone)
(719) 578-5504 (fax)
gvaughan@vaughandemuro.com
asmith@vaughandemuro.com

*Attorneys for Defendants Van't Land and
Evenson in their Individual capacities*

## 2.       STATEMENT OF JURISDICTION

This  action  arises  under the Constitution and  laws  of the United  States pursuant  to 42 U.S.C. § 1983, and under Colorado state law including the wrongful death act, C.R.S. § 13-21-201 *et seq.*

Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Jurisdiction supporting Plaintiff's claim for attorney fees and costs for claims brought pursuant to 42 U.S.C. § 1983 is conferred by 42 U.S.C. § 1988.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein are alleged to have occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

## 3.       STATEMENT OF CLAIMS AND DEFENSES

### a.       Plaintiffs' Statement:[1]

### <u>Anthony Love falsely reported to CSPD that De'Von Bailey robbed him.</u>

De'Von Bailey, a 19-year-old Black man, spent the afternoon of August 3, 2019 hanging

---

[1] The facts section of Plaintiffs' Complaint and Jury Demand [Doc. 1] is hereby incorporated as if set forth fully herein.

out with his girlfriend, Laquana Gardner; his cousin and close friend, Lawrence Stoker; and a gaggle of other teenaged friends and relatives.

At some point during the afternoon, 19-year-old Anthony Love, who had known Mr. Bailey and Mr. Stoker from when they had attended the same school years earlier, approached Mr. Bailey, Mr. Stoker, Ms. Gardner, and a couple of other friends who were standing and talking in the parking lot outside the Rosewood Apartments, where Mr. Bailey lived.

At some point in the conversation, Mr. Love, who was heavily intoxicated with alcohol and marijuana, began to make inappropriate comments toward Ms. Gardner, which she repeatedly rebuffed. Seeing that Mr. Love was not going to respect Ms. Gardner's requests to leave her alone, Mr. Stoker also asked Mr. Love to step away. After a brief argument, Mr. Love angrily threw a punch at him. Mr. Stoker defended himself, and a brief fight broke out where Mr. Stoker hit Mr. Love in the right eye, they both fell down and rolled around for a very short period of time before Mr. Bailey broke up the fight. He took no violent action of any kind, nor did he use or display any weapons; he simply pulled the combatants apart.

Furious, embarrassed, humiliated, and still heavily intoxicated, Mr. Love eventually left the gathering, shouting violent threats at Mr. Stoker and Mr. Bailey. He went to the nearby home of Anthony Rivera, another attendee of the gathering who he had visited earlier, to pick up his backpack. He was quickly asked to leave that residence as well, due to his excessive drunkenness and belligerence.

More than an hour later, seeking revenge against Mr. Stoker and Mr. Bailey, Mr. Love called 9-1-1 from a nearby elder care facility and falsely reported that Mr. Bailey and Mr. Stoker had approached him on the street, beaten him, menaced him with a gun, and stolen his wallet. He

told the 9-1-1 operator that the robbery had only just occurred.

Mr. Love is known in his community for settling personal grudges by contacting police and making false reports of crimes, thereby causing police officers to contact those people under the false impression that they are involved in criminal activity. Mr. Stoker was nevertheless prosecuted but was acquitted of all charges in the alleged assault, having in fact acted in self-defense after Mr. Love threw a punch at him. However, Mr. Stoker was not charged with robbery because Mr. Love's lie fell apart under the slightest police investigation after Mr. Stoker was arrested.  The jury was out for approximately 10 minutes before acquitting him on assault charges, and jurors later apologized to Mr. Stoker for having to go through with this charade. At the trial, it came to light Mr. Love has claimed to be a victim of at least 5 prior aggravated robberies.

Mr. Bailey, however, would never have the opportunity to have his name cleared of Mr. Love's outrageous lie; tragically, Defendant Colorado Springs Police Department (CSPD) officers shot and killed Mr. Bailey before conducting any substantive investigation into Mr. Love's false report.

### **Defendants Van't Land and Evenson shot Mr. Bailey in the back, killing him and violating his clearly established constitutional rights.**

Sometime after the fight between Mr. Stoker and Mr. Love, Mr. Bailey and Mr. Stoker were walking on Preuss Road in the same quiet, residential area of Colorado Springs when Defendant Van't Land stopped his police SUV in the middle of the street and approached them. A few seconds later, Defendant Evenson and CSPD Officer Richard Gonzalez parked their own cruisers nearby.

Defendant Van't Land exited his vehicle first, and Mr. Bailey and Mr. Stoker calmly walked toward him when he gestured for them to do so, wholly compliant with his commands.

Defendant Van't Land asked for the two men's names, and Mr. Stoker asked Defendant Van't Land about the reason for the stop.

As Mr. Stoker spoke with Defendant Van't Land, Defendant Van't Land asked Mr. Bailey to keep his hands out of his pockets. Mr. Bailey immediately complied, apologizing to Defendant Van't Land and moving his arms and stretching them out perpendicular to his torso to demonstrate that he would not touch his pockets any further. He did not reach for his pockets again at any point through the rest of the interaction with the CSPD officers.

Defendant Van't Land again asked Mr. Bailey his name; he responded, "De'Von." By this time, Officer Richard Gonzalez and Defendant Evenson had taken up positions a few feet away, to the right of Defendant Van't Land and to the left of Mr. Stoker. Defendant Van't Land ordered Mr. Bailey and Mr. Stoker to put their hands in the air. Both Mr. Bailey and Mr. Stoker immediately complied.

The officers then began to close in on Mr. Stoker and Mr. Bailey. Officer Gonzalez approached Mr. Stoker from the side, and Defendant Evenson approached Mr. Bailey from behind. As Defendant Evenson approached Mr. Bailey, Mr. Bailey turned and sprinted up the street, directly away from the officers and Mr. Stoker. Defendant Van't Land immediately drew his weapon to shoot Mr. Bailey. Likewise, Defendant Evenson drew his weapon to shoot Mr. Bailey.

Defendant Van't Land shouted three times in approximately two seconds: "Hands up, hands up, hands up!" He gave **no other commands, and no warnings** that he was going to shoot Mr. Bailey. Before Defendant Van't Land had even finished saying the word "up" for the final time, he fired at Mr. Bailey's back. Immediately, Defendant Evenson also began firing at Mr. Bailey's back. Neither Defendant Van't Land nor Defendant Evenson ever, at any point, warned

Mr. Bailey that they would use deadly force if Mr. Bailey did not stop trying to run away from them.

Defendant Van't Land and Defendant Evenson fired their guns a total of eight times over the course of less than two seconds. Defendant Van't Land fired six times, while Defendant Evenson accounted for the remaining two shots. Three bullets struck Mr. Bailey in the back, and one additional bullet grazed his elbow. He collapsed in the street, bleeding profusely from his wounds.

As Defendant Van't Land and Defendant Evenson approached the fallen Mr. Bailey, they again ordered him to put his hands up. Mr. Bailey summoned the energy to put his right hand in the air, even as he lay dying. This signal of compliance would be Mr. Bailey's final conscious act.

At that point, the officers searched Mr. Bailey and handcuffed him, and found a gun deep within the pockets of his shorts. The gun was so deep within his shorts that the officers were required to cut Mr. Bailey's shorts to remove the gun because it was so difficult to retrieve out of his shorts pocket. At no time did Mr. Bailey display (or even touch) the gun when in the presence of the officers, nor did he indicate that he had a gun or reference a weapon in any way.

An ambulance arrived on scene minutes later and rushed Mr. Bailey to Memorial Central Hospital in Colorado Springs; he was pronounced dead shortly after arriving at the hospital.

At no point before Defendants Van't Land and Evenson searched Mr. Bailey did they see that Mr. Bailey possessed a gun. Before they shot Mr. Bailey multiple times in the back, Defendants Van't Land and Evenson never saw that Mr. Bailey had a gun, Mr. Bailey made no statements indicating he had a gun, and Mr. Bailey never displayed the gun. Defendants Van't Land and Everson had no reason to believe that Mr. Bailey posed a threat to them or anyone else

such that deadly force was necessary to apprehend him.

Defendants' unconstitutional killing of Mr. Bailey has deprived his parents of a son, his girlfriend of a partner, and his child of a father.

Defendants Van't Land and Evenson acted in violation of clearly established constitutional rights, and intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard to Mr. Bailey's federally protected rights, and acted under the preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision of Defendant Colorado Springs acting under color of state law.

### **Defendant Colorado Springs is liable for the Individual Defendants' actions because it has an unconstitutional deadly force policy, as well as a custom and practice of using excessive force and engaging in racially biased policing.**

It has long been the custom and actual practice of CSPD to engage in, encourage, and condone the use of excessive force by CSPD officers, particularly against African Americans. Colorado Springs did not terminate or discipline either Defendant Van't Land or Evenson ("the Individual Defendants") or even counsel them for their actions. Further, CSPD provided no additional training to either Individual Defendant, or other CSPD officers, related to the killing of Mr. Bailey. Colorado Springs' and the CSPD's official position on the events regarding the shooting death of De'Von Bailey is that the officers' conduct was appropriate, consistent with and engaged in pursuant to all approved police policies, practices and training of the City of Colorado Springs and the CSPD. This ratification of the conduct that caused Mr. Bailey's death evidences that the conduct was engaged in pursuant to policy, custom, and practice of the Colorado Springs; had it been *outside* of policy, disciplinary or remedial action would have been taken.

The custom and practice of excessive force and racially biased policing is evidenced by a considerable number of other events, as detailed in Plaintiff's Complaint, [Doc. 1] at ¶¶62-68.

These examples show that Defendant Colorado Springs fostered "a policy of inaction" in the face of knowledge that CSPD officers were frequently violating specific constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, which is the functional equivalent of a decision by Colorado Springs itself to violate the Constitution. This "policy of inaction" and policies, customs, or practices in failing to properly train and supervise its employees were a moving force and proximate cause of Individual Defendants' violation of Mr. Bailey's constitutional rights.

Indeed, CSPD's Use of Force analyses from 2014-2017 show racially biased uses of force. Colorado Springs' population is approximately 6.5% African American. Even so, in 2014 and 2015, approximately 20% of the people against whom CSPD used force were African American. In 2016 and 2017, that figure jumped to 26% and 25%, respectively. In 2017, CSPD officers used force against 21% of the total number of African American males who were arrested. In the same year, CSPD officers used force against only 12% of the total number of White males who were arrested. These figures make clear that CSPD officers are disproportionately more likely to use force against African American men, like Mr. Bailey, than against similarly situated white suspects.

Colorado Springs is responsible for training its officers to ensure they perform their duties consistent with the law and to discipline their improper conduct. Colorado Springs's failure to do so has communicated to, and trained, CSPD officers, including Defendants Van't Land and Evenson, that excessive force against African Americans is authorized and tacitly (or explicitly)

encouraged. The failure to counsel or discipline misconduct constitutes training which causes future similar unconstitutional conduct.

Moreover, Colorado Springs has a policy that trained its officers that deadly force was authorized against a fleeing felon if the officer had probable cause to believe that the subject had used a gun in the commission of a felony, even if the officer or a third party was not at in imminent risk of death or serious bodily injury. This policy and training were unconstitutional by allowing officers to use deadly force in circumstances in which the subject of the force posed no immediate threat to the officer or others, but a risk existed that the officers would fail to apprehend him without the use of deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). This policy and training thereon caused the Individual Defendants to use unconstitutional deadly force against Mr. Bailey, in violation of Plaintiffs' constitutional rights.

**Defendants violated Plaintiffs' constitutional rights.**

Defendants' actions, as described herein, deprived Plaintiffs of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused them other damages. As a result of Defendants' conduct:

1) Plaintiff Estate of De'Von Bailey brings a claim of Excessive Force against all Defendants in violation of the Fourth Amendment and pursuant to 42 U.S.C. § 1983.

2) Plaintiff Estate of De'Von Bailey brings a claim of Denial of Equal Protection against all Defendants in violation of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983.

3)  Plaintiff R.B., through her mother and legal guardian Laquana Gardner, brings a claim of Battery Causing Wrongful Death against Defendants Defendants Van't Land and Evenson pursuant to Colo. Rev. Stat. § 13-21-201, *et seq.*

**b.    Defendants' Statement:**

**Defendants Sergeant Alan Van't Land and Officer Blake Evenson ("Officer Defendants"):**

This case arises out of an August 3, 2019, incident in which, during a stop by Van't Land, De'Von Bailey ("Bailey"), a suspect in an armed robbery and assault and who was reasonably believed to be armed and dangerous, fled when Van't Land informed him that he would be searched for weapons. Refusing commands of Van't Land and Evenson not to reach for his waist and to put up his hands, Bailey instead reached for his shorts where he was believed to be holding the weapon used in the reported armed robbery. Fearing imminent serious personal injury or death for themselves and others, Van't Land and Evenson fired their service weapons, striking Bailey. Bailey, who was found to have in fact had a gun in his shorts, died from the gunshot wounds.

Plaintiffs bring three claims for relief. As to the Officer Defendants those claims are:  42. U.S.C. §1983 4th Amend. – Excessive Force (by the Estate); 42 U.S.C. § 1983 14th Amend. – Equal Protection (By the Estate); and, C.R.S. §13-21-201, et seq., -- Wrongful Death (By R.B. a minor).

Officer Defendants have filed a Motion to Dismiss or Alternatively for Early Summary Judgment [Doc. 27] raising arguments under both prongs of the qualified immunity defense doctrine as well as a failure to state a claim. Officer Defendants have not yet filed an Answer. Should Officer Defendants be required to file an Answer, they adopt the Answer and Defenses as may be pled which are anticipated to include but not be limited to a denial of liability, denial of

the nature and extent of damages, qualified immunity, self-defense and defense of others,
objectively reasonable use of force, comparative fault of the decedent, immunities and limitations
of the Colorado Governmental Immunity Act, and acts of third parties and designated non-parties.
Based on the unnecessary length[2] of the description of claims by Plaintiffs, Officer Defendants
do not attempt to address each such statement but, to the extent not admitted in any Answer by
the Officer Defendants, such allegations are denied. Officer Defendants do state that as to
Plaintiffs' allegations that Anthony Love falsely reported that he was the victim of an assault and
armed robbery, whether such allegations were false is a question of fact but, indisputably,
Anthony Love did provide credible allegations that he was the victim of a violent assault in which
he was confronted by two men who assaulted him and at gun point forcibly took his wallet. That
information, along with other details including the description of the suspects and the location of
the armed robbery, was aired to officers, including Officer Defendants. And, prior to Officer
Defendants making contact with Bailey and Stoker, Officer Katherine McFerran obtained
confirming and other information from Love and aired it to officers including Officer Defendants.
The contact between Officer Defendants and Bailey and Stoker is recorded on the officers'
body worn cameras (BWC) and include, but are not limited to, establishing that Bailey and Stoker
were advised by Van't Land that he was investigating an assault committed by two people with
similar descriptions and who possessed a gun. He advised both not to reach for their waists and
that the officers were going to check and make sure that they did not have a weapon. Immediately
thereafter, as Evenson approached Bailey to conduct the search, Bailey dropped his hands and ran.

---

[2] According to the Scheduling Order form that parties in civil actions such as this are to follow the parties are to
provide a "concise statements of all claims or defenses" and are not to "summarize the pleadings." But that is
precisely what Plaintiffs' statement of claims and defenses does. Officer Defendants request that this Court instruct
counsel for Plaintiffs that future proposed scheduling orders comply with the instructions of this District.

Further, the BWC videos demonstrate that, despite being told on multiple occasions to put his hands up, Bailey, as he ran, moved his hands forward and to his waist.

The conduct of Bailey would pose to a reasonable officer, and did pose to Officer Defendants, a reasonable belief that Bailey was reaching for a gun and that Officer Defendants and others were in danger of serious injury or death and that their use of deadly force was objectively reasonable. And a subsequent search of Bailey confirmed that he did have a gun – one that had been reported previously as a stolen gun. As demonstrated by the many cases cited by Officer Defendants in their Motion to Dismiss or Alternatively for Early Summary Judgment [Doc. 27], use of deadly force by law enforcement officers in similar circumstances has been found to be objectively reasonable.

Officer Defendants object to any reframing of the allegations in the Complaint through Plaintiffs' description of the claims.

**Defendant City of Colorado Springs ("City"):**

The use of force, here, was not the result of an unlawful custom or policy. Further, the City does not have an unlawful policy or custom of using deadly force or engaging in selective enforcement.

The complaint does not state a plausible *Monell* claim against the City. As a threshold issue, if the officers' actions are found to be constitutionally consonant then no viable claim exists against the City. Further, the lawsuits cited in the complaint are factually distinct from the underlying incident. The complaint only notes one instance where CSPD used deadly force. (ECF No. 1, ¶ 73). But, there is no suggestion that Sergeant Van't Land's alleged use of force on that previous occasion was unlawful. Further, one prior instance is insufficient to establish a

12

custom. The lawsuits themselves, aside from being factually distinct, are also merely allegations of wrongdoing and nothing more. The supplemental use of statistics do not nudge the claim any closer to plausibility. The standard for alleging a selective enforcement claim is demanding. The complaint fails to allege discriminatory effect and discriminatory purpose. The City also disciplines its officers when unlawful conduct occurs. The complaint does not allege deliberate indifference, a direct causal link or a glaring omission in the City's discipline, training, or supervision. The City will incorporate all affirmative defenses that may be raised in its answer, should one be filed.

### 4.    UNDISPUTED FACTS

The following facts are undisputed:

1.    At all times pertinent to the subject matter of this litigation, the decedent De'Von Bailey was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

2.    Defendant City of Colorado Springs, Colorado, is a home rule municipality duly incorporated under Article XX, § 6 of the Colorado Constitution and the Colorado Springs City Charter. The Colorado Springs Police Department ("CSPD") is a division of the City of Colorado Springs.

3.    At all relevant times , Defendant Alan Van't Land, a citizen of the United States and resident of the State of Colorado, was employed as a Sergeant with the City of Colorado Springs Police Department and was acting within the scope of his employment and under color of state law.

4.    At all relevant times pertinent, Defendant Blake Evenson, a citizen of the United

States and resident of the State of Colorado, was employed as an Officer with the City of Colorado Springs Police Department and was acting within the scope of his employment and under color of state law.

### 5.      COMPUTATION OF DAMAGES

**Plaintiffs:** Plaintiffs claim declaratory and injunctive relief, as appropriate; economic losses on all claims allowed by law in an amount to be determined at trial; compensatory and consequential damages, including, but not limited to, damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; punitive damages on all claims allowed by law and in an amount to be determined at trial; attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the lawful rate; and any further relief that this court deems just and proper, and any other relief as allowed by law.

Plaintiff Estate has suffered injuries and losses, including the death of Mr. Bailey entitling it to recover his compensatory and special damages, including, but not limited to, for loss of constitutional rights, loss of life, loss of relationships, loss of enjoyment of life, medical expenses, and his herein described horrific and terrifying pain and suffering during and leading up this fatal event, permanent lost earnings and earnings capacity for the expected productive working lifetime of Mr. Bailey under the mortality tables and other special damages, all in amounts to be proven at trial.

Plaintiff R.B., by and through her mother Laquana Gardner, has suffered and continue to suffer economic and non-economic damages, losses, and injuries in an amount to be determined by the jury at trial. These damages include, but are not limited to, funeral/cremation expenses,

financial losses, pain and suffering, upset, grief, loss of society and companionship, impairment in the quality of their lives, inconvenience, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Statute. Plaintiff R.B. is therefore entitled to general and compensatory damages for such pain and suffering and emotional distress and to special damages.

Other than economic damages, Plaintiffs' damages are not of the type that can be tallied here. Plaintiffs have claims for their upset and feelings. Plaintiff Estate has claims for the loss of life of Mr. Bailey. Plaintiffs have claims for punitive damages. These are not quantifiable other than by a jury. Damages for emotional distress, in particular, are not susceptible to the type of calculation contemplated by Rule 26(a)(1). "[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 487 n.3 (5th Cir. 2000).

Undersigned counsel will provide Defendants in this matter with whatever quantifiable evidence is obtained to show measurement of damages, but civil rights violations like this are not given to easy description of losses and instead require that the jury announce their value.

A preliminary[3] estimate of those categories of Plaintiffs' damages that are readily calculable include the following:

**$2,325,400**, in net present value, of lost wages.

Additionally, the loss of value of life is calculated at **$10,000,000** in 2020.

A more precise computation of Plaintiff's damages, to the extent Plaintiff's damages are

---

[3] These estimates are preliminary only and will be revised and supplemented as necessary as additional information becomes available.

subject to such computation, will be provided during the normal course of discovery, and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter.

**Defendants:**

Defendants are not seeking any damages from Plaintiffs but reserve the right to seek costs and fees to which they may be entitled by law. Defendants dispute the nature and extent of Plaintiffs' claimed damages.

### 6.     REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED. R. CIV. P. 26(F)

**a.**     Date of Rule 26(f) meeting: **November 13, 2020.**

b.     Names of each participant and each party represented: Counsel for all Plaintiffs, Darold W. Killmer, Mari Newman, Liana Orshan, and Reid Allison of Killmer, Lane & Newman, LLP, met via telephone with counsel for all Defendants: Erik Lamphere of the Colorado Springs City Attorney's Office on behalf of the City of Colorado Springs and Gordon L. Vaughan of Vaughan & DeMuro on behalf of the Officer Defendants.

c.     Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1): None.

**d.**     Statement as to when Rule 26(a)(1) disclosures were made or will be made: Rule 26(a)(1) disclosures were made on or before **November 30, 2020.**

e.     Defendants request that this Court include the following provision in the Scheduling Order:

Subject to entry of a Protective Order, Plaintiffs will provide medical records of De'Von Bailey, without the need for a release, for all medical records generated following his being shot.

Officer and City Defendants further request an order that (1) Plaintiffs will within the next 90 days request complete medical records of Bailey for the ten years preceding his death and promptly provide those records to the parties along with a privilege log for any records withheld; (2) Plaintiffs will provide to the parties all Medicaid or Medicare lien information, if any.

Plaintiffs object to these requests; if Defendants desire medical or other records beyond what Plaintiffs produced in their Initial Disclosures, the proper way to request those is via a written request for production under Fed. R. Civ. P. 34. It is inappropriate to embed a party's discovery requests in the Scheduling Order. Plaintiffs will respond to any appropriate discovery requests under the Federal Rules of Civil Procedure.

f.    The parties agree to take all reasonable steps to reduce discovery and reduce costs.

g.    The parties do not anticipate that this case will involve extensive amounts of electronically stored information. The parties will produce ESI documents in PDF rather than native format, via secure e-mail or a secure cloud-based delivery file-sharing system. The parties will cooperate in regard to producing any video evidence in a useable and accurate format. The parties will produce privilege logs with respect to any documents or information withheld according to an asserted privilege or other protection. The parties further agree to work cooperatively to avoid discovery disputes related to electronically stored information

h.    The parties agree to cooperate in good faith regarding taking remote depositions by telephone and video conferencing where technically feasible and if necessary due to COVID-19 restrictions.

i.    The Parties agree that, in providing any supplemental disclosures or supplemental written discovery responses, that new information will be added to the previously served document in bold font so as to create a single document that contains all original information and all supplemental information.

j.    The parties agree that they will serve by email or electronic means all discovery requests and written responses and any other papers that are not filed through the CM/ECF system unless doing so is not technically feasible, in which case those documents will be served via first-class mail or overnight delivery. The parties agree that document productions may be served on disc via first-class mail or through a secure file-sharing system.

k.    The parties agree to produce to the other parties any documents obtained via subpoena from a third party in accordance with the Federal Rules of Civil Procedure within fourteen business days, unless the parties agree to a later period of time.

Defendants request that this Court order that this same requirement apply to records received through open records act (including FOIA) requests. Plaintiffs object to this request.

l.    Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case: The Parties have participated in two private mediations and extensively discussed the possibility for a prompt settlement or resolution of the case. The parties will report the result of any future settlement meetings to the Court as they deem necessary or useful.

**7.       CONSENT**

All parties have not consented to the exercise of jurisdiction of a magistrate judge. *See* Doc. 9.

**8.       DISCOVERY LIMITATIONS**

a.       Plaintiffs collectively and Defendants collectively agree to limit the number of depositions to 10 per side, inclusive of parties and exclusive of experts. The parties agree to limit the length of depositions to 7 hours unless a longer deposition is agreed to by the parties or ordered by the court.

b.       Plaintiffs collectively shall be limited to ten (10) interrogatories to each Defendant Van't Land and Defendant Evenson ("Individual Defendants") and twenty (20) interrogatories to Defendant City of Colorado Springs.   Defendants collectively may serve a total of forty (40) interrogatories to the collective Plaintiffs.

c.       Requests for Production and Admission:

Plaintiffs shall be limited to ten (10) requests for production and ten (10) requests for admission to each of the Individual Defendants and twenty-five (25) requests for production and twenty (20) requests for admission Defendant City of Colorado Springs. Defendants collectively may serve a total of thirty-five (35) requests for production and thirty (30) requests for admission to the collective Plaintiffs.

d.      Other Planning or Discovery Orders: The parties anticipate their submission to the Court of a proposed protective order for its review and approval to accommodate the exchange of confidential documents and other information during the discovery process.

e.      Killmer, Lane & Newman, LLP policy does not allow the carrying of firearms in the office and requests an Order from this Court that no one shall be permitted to carry any firearms during depositions in this matter. Defendants object to this proposal.

### 9.      CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

**a.**      Deadline for Joinder of Parties and Amendment of Pleadings**: January 7, 2021.**

**b.**      Discovery Cut-off: **September 24, 2021**

c.      Dispositive Motion Deadline: **October 25, 2021**

d.      Expert Witness Disclosure

(1)      Statement regarding anticipated fields of expert testimony, if any:

a)      <u>Plaintiffs</u>: Plaintiffs anticipate calling retained experts in the following possible fields: police practices, economic damages, value of human life, implicit bias, cognitive psychology, forensic video analysis, statistics, emotional distress, and any expert as may be necessary for rebuttal or impeachment.

b)      <u>Defendants</u>: Defendants anticipate calling experts in the following possible fields: police practices / use of force; expert in reaction times for persons with firearm to fire and reaction time for police; police psychologist regarding perception in high stress incident; economist; expert in the field of demographics; forensic video analysis; expert in the field of paternity /

dna testing.

(2)   The parties shall be limited to a total of eight (8) experts per side.

**(3)**   The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before: **July 2, 2021**

(4)   The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a) (2) on or before**: August 13, 2021**

e.   Deposition Schedule:

| Name of Deponent* | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Laquana Gardner | TBD | TBD | 7 hours |
| Delisha Searcy | TBD | TBD | 7 hours |
| Greg Bailey | TBD | TBD | 7 hours |
| Alan Van't Land | TBD | TBD | 7 hours |
| Blake Evenson | TBD | TBD | 7 hours |
| Richard Gonzalez | TBD | TBD | 7 hours |
| Katherine McFerran | TBD | TBD | 4 hours |
| Anthony Love | TBD | TBD | 7 hours |
| 30(b)(6) representatives of Defendant City of Colorado Springs | TBD | TBD | 7 hours |
| Other individuals disclosed by the parties in their disclosures and discovery responses | TBD | TBD | ___ hours |

   * The Parties reserve the right to take additional depositions of persons identified in the Parties' disclosures and through the course of discovery.

   f.  Deadline for Interrogatories: All interrogatories must be served at least 30 days prior to the discovery cut-off.

   g.  Deadline for Requests for Production and Admission: All requests for production and requests for admission must be served at least 30 days prior to the discovery cut-off.

## 10.  DATES FOR FURTHER CONFERENCES

   a.  Status conferences will be held in this case at the following dates and times:

_____.

  b.  A final pretrial conference will be held in this case on January 10, 2022 at 10:00 o'clock a.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING ISSUES

   a.  Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement: *See* above.

   b.  All Defendants have filed motions to dismiss [Docs. 25 & 27]. Based on these motions, the Parties anticipate the possibility that the case schedule may be altered.

   c.  The Parties have agreed that the claims against the Officer Defendants in their "official capacity" are redundant to the claims against the City of Colorado Springs and should be dismissed. The Parties will file a stipulation for dismissal of such claims.

   d.  Statement of anticipated length of trial to the jury: **Ten (10) days.** The parties acknowledge Hon. William J. Martinez's Practice Standard Sec. IV(A)(3) regarding the necessity of holding a status conference with the court not later than 3 days after entry of the Final Pretrial Order prior to the setting of a trial more than 5 days in duration.

   e.  Pretrial proceedings, if referred to the Magistrate Judge for disposition, will

be conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476..

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this 24th day of November, 2020.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge